```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALEXANDER IKEJIAKU,

                       Plaintiff,              07-CV-6191

           v.                                  DECISION
                                               and ORDER
ROCHESTER CITY SCHOOL DISTRICT,

                       Defendant.
_____
```

## INTRODUCTION

Plaintiff, Alexander Ikejiaku ("Plaintiff"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-18, alleging employment discrimination on the basis of his race (African American), color (Black) and national origin (Nigerian). See Compl. (Docket #1.) Specifically, Plaintiff alleges that his former employer, the Rochester City School District ("Defendant" or "the District"), discriminated against him by failing to classify his position in the appropriate pay bracket and failing to grant him the salary increases and promotions he sought. Id. at 16-28.  He further alleges that Defendant refused to include his name on a list of individuals who had earned certification as School Business Administrators ("SBA"), and that this failure prevented him from being considered for certain promotional opportunities. Id. at 18.

Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), arguing that

several of Plaintiff's claims are time barred, and that Plaintiff has not established a prima facie case of discrimination with respect to any of his claims, even those that are time barred. Defendant further argues that, even if Plaintiff had established a prima facie case of discrimination, Defendant has articulated a legitimate, non-discriminatory reason for all of its actions with respect to the Plaintiff. See Def. Mem. of Law, (Docket #21-6). Plaintiff opposes Defendant's motion, arguing that there are material issues of fact with respect to his discrimination claim and that this Court should consider the claims that are time barred as background evidence. See Pl. Mem. in Support (Docket #23-2). For the reasons set forth below, this Court finds that Plaintiff has not established a prima facie case of discrimination. Accordingly, Defendant's Motion for Summary Judgment is granted in its entirety, and Plaintiff's Complaint is hereby dismissed with prejudice.

## BACKGROUND

As a preliminary matter, this Court must review the requirements of Local Rule 56.1.[1] Pursuant to Local Rule 56.1,

---

[1]This Court notes that it has on numerous occasions instructed Plaintiff's counsel on the purpose and requirements of Local Rule 56.1, which is meant to streamline the consideration of a motion for summary judgment.  See e.g. Ikewood v. Xerox, 2011 WL 147896 (W.D.N.Y.); Duckett v. Wal-Mart Stores, Inc., 2009 WL 995614 (W.D.N.Y. 2009); Szarzynski v. Roche Laboratories, Inc., 2010 WL 811445 (W.D.N.Y. 2010); Barkley v. Pennyan School Dist., 2009 WL 2762272 (W.D.N.Y. 2009); Kuchar v. Kenmore mercy Hosp., 2000 WL 210199 (W.D.N.Y. 2000).

"Upon any motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, there shall be annexed to the notice of motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." See W.D.N.Y. Loc. R. Civ. P. 56.1(a). "The papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." See id. 56.1(b). "All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." See id. 56.1(c). Accordingly, the moving party is required to submit a statement of facts, which demonstrates that there is no genuine issue of material fact, and the opposing party is required to submit a statement of the facts which are in dispute. Defendant has complied with this requirement. (Docket #12, "Defendant's Statement").

Plaintiff in this case has submitted two documents, one entitled, "Local Rule 56.1 Counter Statement" and one entitled, "Plaintiff's Responses to Defendant's Local Rule 56.1 Statement of Facts." (Docket 23, "Plaintiff's Response"). Plaintiff's Local Rule 56.1 Counter Statement does not comply with Local Rule 56.1, as it contains facts which are not in dispute, it is not keyed to Defendant's Statement, and it complicates the consideration of the

instant motion. Accordingly, this submission will not be considered. Further, Plaintiff's Response, while keyed to Defendant's Statement, is not entirely useful, as the responses are often unrelated to the actual fact asserted and do not point out material issues of fact.

The purpose of Local Rule 56.1 is to streamline the consideration of a summary judgment motion, and this purpose is not accomplished by the submission of duplicative papers which are not in compliance with this Rule. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 (2d Cir.2001). "While the consequence of this miscue is minimal given the general consensus between the parties [as shown by defendant] as to the constituent facts of this case, where a discrepancy exists this Court is obligated to and will 'deem admitted' the [moving party's] version of the facts. At the same time, the Court is obligated to and will believe the [non-moving party's] evidence and all justifiable inferences will be drawn in [its] favor."' See Kuchar v. Kenmore Mercy Hosp., 2000 WL 210199, at *1 (W.D.N.Y.2000); See also Duckett 2009 WL 995614, *2 (quoting Kuchar). Accordingly, this Court has reviewed the parties' statements and the entire record, and the Court finds that the following facts, contained in the Complaint, Defendant's Statement, Plaintiff's Responses, and the other relevant evidence of record, are undisputed and relevant to Plaintiff's claims.

Plaintiff was hired as a Principle Management Analyst ("PMA") for the District in 2000, at a starting salary of $68,500. Defendant employed Plaintiff through 2007, when he resigned to take a position in Springfield, Illinois. Due to annual pay increases, Plaintiff's salary was approximately $95,000 when he left the District.

Defendant employs a bracketing system to determine the starting salary of several different categories of employees, including PMA's and Senior Management Analysts ("SMA"). A SMA is ranked lower than a PMA, but, when Plaintiff began working for Defendant in 2000, the two positions were classified within the same bracket. This classification, however, did not determine the actual salary of the employee, it merely provided a range of salaries from which and employee could start. Thereafter, the employee's salary could change, for instance if the employee was offered a raise. The employee's salary was also not limited to the upper end of the bracket. For example, in 2003, the salary bracket for the PMA and SMA positions was $50,000-$90,000. A new PMA or SMA employee could be hired at a salary of $90,000 and could ultimately earn more than $90,000 during his tenure. However, the employee could not start at a salary of more than $90,000.

In 2003, Plaintiff became concerned about the bracketing of the PMA and SMA positions when a Caucasian male was hired as an SMA, and the position fell into the same starting pay bracket as

the PMA. The Caucasian male, however, was not paid more than the Plaintiff for the SMA position. Nevertheless, Plaintiff complained that the position should not have been bracketed in the same category as the higher-ranked PMA position.

Plaintiff's union, the Administrators and Supervisors Association of Rochester ("ASAR") agreed that the positions should be placed in different pay brackets.  Accordingly, the ASAR bargained with the District to change the classification so that the SMA position was in a lower bracket than the PMA position.  The PMA position was then moved to a higher bracket in June 2005, with a starting salary pay range of $55,000-$95,000. Plaintiff, however, continued to believe that his position should have been moved to the highest category, with a starting salary range of $60,000-$100,000.

At this time, Defendant employed three PMA's, the Plaintiff and two Caucasian females who were paid less than Plaintiff at all relevant times.  The Defendant did not increase the salaries of any of the PMA's at the time of the salary bracketing agreement with ASAR. Plaintiff, however, had expected that a pay increase would follow the bracketing change, as certain employees in different positions were granted pay increases.

Plaintiff has also alleged several other discrete acts by the Defendant in support of his discrimination claim.  First, Plaintiff complains that his name was not added to a list of persons that

were certified as SBA's. Plaintiff sent a letter to the Chief Human Resources Officer, Joanne Guiffrida, in February 2004, informing her that he was certified. He claims that he also asked her to place his name on the list of those certified, however, Guiffrida refused to meet with him on the matter.

Guiffrida stated that the District did not maintain such a list and that if SBA certification was required for a particular promotion, the applicant would submit the certification with his application. She also stated that District employees can submit a general application form that is kept on file and with the application the employee may submit the certification, as Plaintiff did in October 2005. Guiffrida further stated that the only position in the District that requires SBA certification was held by a tenured individual, who continues to hold the position presently and who held the position for the entire time the Plaintiff was employed by the District.

Plaintiff also complains that the District refused to promote him in 2001. Plaintiff was recommended for the position of Assistant to the Managing Director by his supervisor, Marie Cianca, in 2001. Plaintiff states that he was offered the position, which came with a pay raise, and that he accepted the offer. However, the position was newly created and required the approval of the District's Budget Office, which had not yet been attained at the time Plaintiff was recommended. The Budget Office did not approve

the new position, and therefore, Plaintiff did not receive the promotion or a pay raise.

Lastly, Plaintiff complains that he was denied a promotion to Director of Strategic Planning in 2006. The District employed a three person committee to conduct interviews for the position after an application process yielded three potential candidates, Plaintiff, Judith Yamil Quinones and Robert Ulliman. Following the interview, Ulliman, a Caucasian male, was unanimously recommended by the committee and appointed to the position. The District admits that Plaintiff was qualified for the position, as he was selected for an interview, but the committee ultimately determined the Ulliman was better suited for the position. Marjorie Lefler, a committee member, cited Ulliman's interpersonal and analytical skills, and his vision for the future of the position in explaining why Ulliman was recommended for the position. Plaintiff, however, complains that his credentials were superior to Ulliman's and that he was the most qualified candidate for the position.

## **DISCUSSION**

Pursuant to Rule 56, a court may grant a motion for summary judgment if the moving party demonstrates "that there is no genuine issue as to any material fact." See Fed.R.Civ.P. 56(c). Once the movant has met this burden, the burden shifts to the nonmovant who must "come forward with evidence to allow a reasonable jury to find in his favor" on each of the elements of his prima facie case. See

Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir.2001); Celotex Corp. v. Catrett, 477 U.S. 317, 325-27 (1986). The court must draw all factual inferences, and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Celotex Corp., 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." See Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 1776 (2007).

The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir.2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citation omitted)). Rather, he must "set out specific facts showing a genuine issue for trial." See Fed.R.Civ.P. 56(e)(2); See also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some

hard evidence showing that its version of...events is not wholly fanciful.").

Plaintiff alleges that he was discriminated against on the basis of his race, color and national origin. Claims of employment discrimination are analyzed under the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and later refined in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981) and St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). Initially, the plaintiff bears the burden proving a prima facie case of discrimination. If the plaintiff succeeds in stating a prima facie case, the burden shifts to the defendant to state a legitimate, non-discriminatory reason for the employment action. Should the employer meet that burden, the burden then shifts back to the plaintiff to show that the reasons proffered by the employer were not the true reasons for the adverse employment action, but were a pretext for discrimination, and that discrimination was the true reason. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); St. Mary's Honor Center v. Hicks, 509 U.S. 502-06 (1993).

To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show (1) that she belonged to a protected class; (2) that she was qualified for the position she held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances

giving rise to an inference of discrimination.  See Shumway v. United Parcel Service, Inc., 118 F.3d 60, 63 (2nd Cir. 1997). Although the Second Circuit has stated that "the burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion at the prima facie stage is de minimis," Tomka, 66 F.3d at 1308 (internal citations omitted), the Second Circuit also has noted that "[a] jury cannot infer discrimination from thin air." See Norton v. Sam's Club, 145 F.3d 114 (2d Cir.), cert. denied 525 U.S. 1001 (1998).

A.  The Statute of Limitations

Defendant argues, and Plaintiff concedes, that several of his distinct claims of employment discrimination are barred by the statute of limitations. See Pl. Mem. of Law at 11-13. Title VII requires that a claimant file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged act of discrimination. See 42 U.S.C. 2000e-5(e); Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998). Plaintiff filed a charge of discrimination with the EEOC on March 31, 2006, accordingly, Plaintiff cannot assert individual claims based on conduct that occurred prior to June 2005.

Therefore, the following claims are barred by the statute of limitations: (1) Plaintiff's claim based on the 2001 promotion to Assistant to the Managing Director, (2) Plaintiff's salary bracketing claim that accrued in 2003 when he learned that a

Caucasian male was hired into the same starting pay bracket, but at a lower rank, and (3) Plaintiff's claim that the District did not place his name on a list of individuals with SBA certification when he asked in 2004.

Plaintiff, citing <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166 (2d Cir. 2005), argues that his time barred claims should be considered as relevant background evidence for his discrimination claim. <u>See</u> Pl. Mem. of Law at 11-13. However, the actions considered as background evidence in <u>Jute</u> were adverse employment actions, and the conduct Plaintiff has alleged does not rise to that level. 420 F.3d at note 8 (declining to consider the employer's refusal to authorize travel as background evidence, because it did not rise to the level of being adverse).

An adverse employment action is a "materially adverse change in the terms and conditions of employment." <u>Torres v. Pisano</u>, 116 F3d 625, 640 (2d Cir. 1997). "Examples of adverse employment actions include: 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices... unique to a particular situation.'" <u>See</u> <u>Ikewood v. Xerox</u>, 2011 WL 147896, *9 (W.D.N.Y.) (quoting <u>Galabya v. New York City Bd. of Educ.</u>, 202 F.3d 636, 640 (2d Cir.2000). Plaintiff does not contend that the terms and conditions of his employment were altered at all by the time barred

conduct. In fact, the evidence demonstrates that during Plaintiff's tenure, he retained the same position with the same duties and earned yearly salary increases totaling nearly $26,500 over the course of his employment with the District.

While the denial of a promotion may be considered an adverse employment action, Plaintiff was not denied a "promotion" in 2001, because the alleged promotional opportunity was not finally approved by the District's Budget Office, and therefore, the position was not created. Plaintiff also admits that including his name on an SBA list would not have actually enhanced his ability to be promoted during his tenure, because only one position requiring SBA certification is available in the District, and that position was held by the same individual for the entirety of Plaintiff's employment by the District.

Plaintiff's salary bracketing claim also does not rise to the level of an adverse action. Plaintiff was not actually affected by the level of the salary bracket, as it is used only for determining entry-level pay and Plaintiff's salary was greater than the lowest salary level in his bracket when he started. He also earned annual salary increases that led him to the very upper level of his bracket before he voluntarily left the District for another position.

Further, Plaintiff has not provided any evidence, other than his own conclusory statements, to support his claim that any of the

time barred conduct occurred under circumstances giving rise to an inference discrimination. Plaintiff has attempted to string together a series of events in which he believes he was treated poorly by the District, claiming that such incidents occurred because of his race and nationality and that such conduct, together with his timely claims, show a pattern of discrimination. However, Plaintiff has not presented any evidence that would lead a reasonable jury to conclude that the time barred conduct was the result of discrimination.

It is clear, at least with respect to Plaintiff's salary bracketing claim, that he was treated equally (if not better) to other similarly situated Caucasian PMA's. No employee was granted the 2001 promotion, and Plaintiff has not presented any evidence that the Budget Office's decision not to create the position was due to his (or any other potential candidate's) race or nationality. Further, the evidence shows that the District did not place any employee on a list of SBA certified individuals. Accordingly, this Court declines to consider the time barred conduct as background evidence for Plaintiff's discrimination claim. The fact that Plaintiff is African American and Nigerian and that he was displeased with several employment actions is not, without more, sufficient to lead a reasonable jury to conclude that the District's actions were adverse or that they were the result of discrimination. See <u>Garber v. New York City Police Dept</u>., 1997 WL

525396 *7 (S.D.N.Y.) ("Plaintiff's dissatisfaction with the [employer's action] standing alone, does not support his claim of an adverse employment action.").

    B.   <u>2005 Salary Adjustment Claim</u>

Plaintiff argues that, even though his salary bracketing claim is time barred, he has established a prima facie case of discrimination based on the denial of a salary adjustment following the 2005 salary bracketing agreement with the ASAR. However, this Court does not find that this action was adverse or that it occurred under circumstances giving rise to an inference of discrimination.

First, no other similarly situated employee was granted a pay raise following the 2005 agreement. Therefore, the terms and conditions of Plaintiff's employment did not change (materially or otherwise) in relation to other similarly situated employees. Further, Plaintiff was actually paid more that the other PMA's employed by the District who were both Cuacasian. As noted above, the fact that Plaintiff expected a raise at this time and was dissatisfied that the District did not grant him a raise is not enough to establish that the action was adverse or discriminatory. Accordingly, this Court finds that Plaintiff has not presented evidence from which a reasonable jury could conclude that the District's failure to grant him a pay increase following the 2005 agreement with ASAR was due to Plaintiff's race or nationality. <u>See</u>

McIntyre v. Longwood Central School Dist., 658 F.Supp.2d 400, 412-18 (E.D.N.Y. 2009). Accordingly, Plaintiff's claim is hereby dismissed.

    C.    Director of Strategic Planning

To establish a prima facie case under Title VII based on the denial of a promotion, Plaintiff must establish that " (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." McDonnell Douglas, 411 U.S. at 802. Defendant concedes that Plaintiff has established that he applied and was qualified for the promotion, and that he was rejected. However, Defendant argues that the position was filled by the most qualified person, without regard to that person's race or nationality.

The evidence demonstrates that Ulliman was unanimously chosen by the committee that conducted interviews and that, while Plaintiff was qualified, Ulliman was the candidate that gave the best interview. Ulliman also demonstrated better communication and analytical skills and he demonstrated the desired "vision" for the future of the position. Defendant, accordingly, has articulated a legitimate, non-discriminatory reason for rejecting Plaintiff's application. Id.

Plaintiff rebuts Defendant's articulated reason by arguing that his credentials were superior Ulliman's. However, even Plaintiff admits that the credentials he possessed were not required for the position. Further, Plaintiff has not come forward with any evidence, other than his own conclusory statements, demonstrating that Defendant's reasons are merely a pretext for discrimination, and that discrimination is the true reason for his rejection. <u>Id</u>. Therefore, this Court finds that Plaintiff has not established a prima facie case of discrimination based on the 2006 Director of Strategic Planning position. Accordingly, Plaintiff's claim is hereby dismissed.

## **CONCLUSION**

For the reasons set forth above, this Court finds that Plaintiff has not established a prima facie case of employment discrimination. Defendant's Motion for Summary Judgement is granted in its entirety, and Plaintiff's Complaint is hereby dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                               s/ Michael A. Telesca
                                                 MICHAEL A. TELESCA
                                         United States District Judge

Dated:    Rochester, New York
            March 22, 2011